IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KENDRICK D. ADDISON,
a/k/a CHILL,
    Petitioner,

vs.                                  Case No.: 5:10cv39/MCR/EMT

KENNETH S. TUCKER,[1]
    Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

    This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (doc. 13). Petitioner filed a reply (doc. 19).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

    The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 13).[2] Petitioner was charged in the Circuit Court in and for Bay County,

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections. Secretary Tucker is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 13). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2006-CF-003031, with one count of delivery of cocaine (Ex. B at 28). The charge was based upon Petitioner's participation in a "controlled" drug transaction with a confidential informant, Ms. Ranona Williams (Ex. E). Following a jury trial on July 6, 2007, he was found guilty as charged (Ex. B at 33, Ex. E). On July 25, 2007, Petitioner was adjudicated guilty and sentenced to eight (8) years of imprisonment, with presentence credit of 328 days, to run consecutively to the sentence imposed in Case No. 2006-CF-002192 (Ex. B at 38–42, Ex. D).

Petitioner, through counsel, appealed the judgment and sentence to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-4014 (Ex. G). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*). Petitioner filed a pro se initial brief (Ex. H). The First DCA affirmed the judgment per curiam without written opinion on September 17, 2008, with the mandate issuing October 14, 2008 (Exs. I, J). Addison v. State, 990 So. 2d 1061 (Fla. 1st DCA 2008) (Table). Petitioner did not seek further review.

On November 20, 2008, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. N at 1–21). The state circuit court summarily denied the motion (*id.* at 50–52). Petitioner appealed the decision to the First DCA, Case No. 1D09-1271 (Ex. O). The First DCA affirmed the decision per curiam without written opinion on June 11, 2009, with the mandate issuing July 7, 2009 (Exs. Q, R). Addison v. State, 11 So. 3d 356 (Fla. 1st DCA 2009) (Table).

On February 16, 2010, Petitioner filed a motion to allow jail credit (Ex. K). The state circuit court construed the motion as a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure and summarily denied the motion on March 18, 2010 (Ex. L). Petitioner did not appeal the decision.

Petitioner filed the instant federal habeas action on February 22, 2010 (doc. 1 at 7).[3]

---

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to"

---

[4] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the

governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at *18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

    A.    <u>Ground One: "Counsel committed prejudicial error by failing to properly investigate the facts of the case."</u>

Petitioner alleges he met with defense counsel to discuss the facts of his case, and counsel stated he would "look into everything" (doc. 1 at 5). However, Petitioner states defense counsel failed to investigate "the depth of State's witness [sic] prior dealing with the defendant" (*id.*). Petitioner states he raised this claim in his Rule 3.850 motion (*id.*).

Respondent argues Petitioner failed to exhaust any of the claims raised in his § 2254 petition (doc. 13 at 5–8). Respondent states Petitioner presented each claim in his Rule 3.850 motion, but he did not argue any of them in his brief on appeal of the lower court's summary denial of the motion; instead, Petitioner argued only a procedural issue (*id.*). Therefore, according to First DCA precedent, he waived appellate review of all of his claims (*id.* at 7–8). Respondent thus argues the claims raised in Petitioner's § 2254 petition are procedurally barred from federal review (*id.*). Respondent additionally contends, notwithstanding the exhaustion argument, the state court's adjudication of Petitioner's claims was not contrary to or an unreasonable application of clearly established federal law (*id.* at 8–17).

The state court record shows that in Petitioner's Rule 3.850 motion, he raised five claims of denial of his federal constitutional right to effective assistance of counsel (Ex. N at 2, 10–19). Petitioner did not receive an evidentiary hearing on any of his claims. In such cases, a Rule 3.850 movant is not required to file an appellate brief in order to receive appellate review of his claims. *See* Fla. R. App. P. 9.141(b)(2). The Eleventh Circuit held, albeit in an unpublished opinion, that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to <u>all</u> claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief. *See* <u>Cortes v. Gladish</u>, 216 Fed. Appx. 897, 899–900, 2007 WL 412484, at *2 (11th Cir. 2007) (emphasis added). The Florida case upon which the Eleventh Circuit relied, <u>Webb v. State</u>, 757 So. 2d 608 (Fla. 5th DCA 2000), has been receded from by the Florida courts. *See* <u>Walton v. State</u>, 58 So. 3d 887, 888 (Fla. 2d DCA 2011); <u>Vars v. State</u>, 50 So. 3d 1202, 1203 (Fla. 4th DCA 2010); <u>Ward v. State</u>, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009);

Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008). However, the undersigned cannot say that at the time Petitioner filed his post-conviction appeal, March of 2009, the state of the law was such that he was required to raise and fully address all issues in his appellate brief to obtain appellate review of the federal claims raised in his summarily denied Rule 3.850 motion. Therefore, the court rejects Respondent's exhaustion argument and deems all of the claims raised herein exhausted.

1. Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no

'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption

of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

        2.        Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his Rule 3.850 motion (Ex. N at 10–11). He argued defense counsel should have investigated the fact that Ranona Williams, the person to whom he delivered $40.00 worth of crack cocaine during the controlled drug transaction, had previously received a "front" of $200.00 worth of cocaine from him (*id.* at 11). Petitioner argued this fact would have shown that Ms. Williams was motivated to testify falsely against him by her desire to be relieved of her $200.00 debt (*id.*).

The state circuit court identified the Strickland standard as the appropriate legal standard for reviewing Petitioner's claims (Ex. N at 50–52). The court denied Ground One on the following grounds:

> In Ground One, the Defendant argues that counsel was ineffective for failing to properly investigate the case prior to trial, which prejudiced him. He claims that the State's informant, Ronona [sic] Williams, who set up the controlled buy with the Defendant testified that her motive for assisting the police was that she was facing prosecution for possession. She also testified that she would not be prosecuted if she testified at the Defendant's trial. The Defendant claims that Ms. Williams had an additional motive in testifying, as she borrowed $200 from the Defendant and had not paid him back.[5] The Defendant argues that the true motive of Ms. Williams' testimony was to avoid repayment if he was convicted. The Defendant further claims that if Defense Counsel had thoroughly investigated the case, counsel would have discovered the witness's true motives for testifying. If the witness did in fact owe the Defendant money, this fact was known by the Defendant at the time of trial and he should have been [sic] brought it Defense Counsel's attention. The Defendant does not allege that he told Defense Counsel this information and that counsel ignored him. The Defendant simply blames Defense Counsel for failing to discover this information on his own. The Defendant has not demonstrated deficient performance of counsel; therefore, Ground One is due to be denied.

(Ex. N at 50).

---

[5] Although the state court stated that Ms. Williams had previously borrowed $200.00 from Petitioner, Petitioner actually claimed—as noted *supra*—that he had provided $200.00 worth of drugs to her, for which she still owed him (Ex. N at 11).

The state court record shows that the theory pursued by the defense at trial was that the State failed to prove Petitioner delivered anything, let alone cocaine, to Ms. Williams (Ex. E at 20–21, 24, 127–31). Ms. Williams testified she arranged with Petitioner to buy $40.00 worth of cocaine on August 15, 2006; she approached Petitioner in person, and he instructed her to leave the money near a tree; and upon her leaving the money, Petitioner told her the cocaine was in a cigarette pack and directed her to the pack (*id.* at 27–43). Defense counsel elicited testimony from the State's witnesses that there were no fingerprints on the cigarette pack containing cocaine, which was recovered from Ms. Williams after the controlled buy; none of the officers involved in the controlled buy actually saw Petitioner in possession of the cigarette pack; and the videotape of the controlled buy arguably did not depict Petitioner in possession of the cigarette pack (*id.* at 60–61, 70, 74, 91–92, 105–06). Additionally, Ms. Williams admitted that her motive for participating in the controlled buy involving Petitioner was her desire to avoid criminal charges for a prior incident during which she was arrested for purchasing cocaine for a friend (*id.* at 25–26, 43–44). Law enforcement officers involved in the controlled buy acknowledged the deal between Ms. Williams and law enforcement, that she would not face criminal charges for the prior incident if she participated in the controlled buy involving Petitioner (*id.* at 58–59, 106–07). Although testimony that Ms. Williams owed Petitioner $200.00 for cocaine she had previously received from him, but for which she had not paid, may have established an additional motive, it also would have revealed information damaging to the defense, that is, that Petitioner previously provided cocaine to Ms. Williams. Therefore, it was reasonable for defense counsel to decline to present such evidence. Further, as the state court pointed out, Petitioner knew that Ms. Williams owed him money and readily could have provided this information to counsel. Moreover, in light of the questionable benefit such testimony would have provided, there is no reasonable probability the jury would have acquitted him had they heard Ms. Williams admit she owed Petitioner $200.00 for cocaine he previously provided. Therefore, the state court's denial of this claim was not an unreasonable application of Strickland.

  B. Ground Two: "Counsel was deficient by not allowing the defendant to review depositions."

Petitioner contends defense counsel was ineffective for failing to facilitate his review of depositions (doc. 1 at 4).  He asserts defense counsel requested a continuance to provide Petitioner an opportunity to review the depositions, but the trial court denied the motion (*id.*).

       1.      Clearly Established Federal Law

The <u>Strickland</u> standard is set forth *supra*.

       2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Two in his Rule 3.850 motion (Ex. N at 12–13).  He asserted counsel's failure to facilitate his review of depositions deprived him of the opportunity to prepare a proper defense, because he had no knowledge of the substance of the State witnesses's testimony (*id.* at 12).  He contended if counsel had reviewed Ms. Williams's deposition with him, he would have told counsel that the only reason Ms. Williams participated in the controlled buy and testified against him was to relieve herself of the $200.00 debt she owed Petitioner (*id.* at 12–13).

The state circuit court denied relief on the following grounds:

> In Ground Two, the Defendant claims that counsel was ineffective for failing to allow him to review Williams' deposition transcript in its entirety, instead of merely summarizing its substance for him.  The Defendant claims that, if he had the opportunity to read the deposition, he could have informed counsel of Ms. Williams' true motives in testifying, as discussed above.  Again, if Mr. Williams' truly owed the Defendant money, the Defendant would have known this at the time of trial with or without reading the deposition.  The Defendant not informing Defense Counsel of Ms. Williams' debt to the Defendant does not make counsel's performance ineffective.  Further, the Defendant was present at trial and heard Ms. Williams' testimony.  He could have brought any issues to counsel's attention at that time, but he did not.  Additionally, the record reflects that Defense Counsel orally moved for a continuance at trial, based upon the fact that the Defendant had not heard or read all the depositions.  The Court denied the Motion. [reference to trial transcript]  After Counsel made the argument for a continuance, the ruling was out of Defense Counsel's hands.  Ground Two is without merit.

(Ex. N at 51).

The state court record shows that on the day of trial, defense counsel requested a continuance, on the ground that Petitioner had not had an opportunity to review the depositions of the State's witnesses (Ex. E at 3–4, 8).  Counsel argued Petitioner's review of the depositions was required to enable Petitioner to make an informed decision whether to go to trial or attempt to

negotiate a plea (*id.* at 4). The trial court questioned counsel as to whether he and Petitioner had discussed the case, and counsel responded that they had (*id.*). The court further questioned whether counsel described to Petitioner the "gist" of the State's case, and counsel responded, "I would say that's fair" (*id.* at 4–5). The court denied the motion for continuance on the ground that Petitioner obviously knew whether he was involved in the controlled buy and, if so, what occurred or did not occur during it; and Petitioner's knowledge of the "gist" of the State's case from discussions with defense counsel was sufficient information upon which to evaluate a plea offer (*id.* at 5–8).

Petitioner failed to show he was prejudiced by counsel's failure to make the deposition testimony available for his review. To the extent Petitioner suggests he would have accepted a plea offer from the State had counsel made the depositions available, the trial transcript refutes this assertion. During the discussion between the trial court and the parties regarding the issue of continuing the trial, Petitioner stated the reason he rejected a plea offer from the State was that the prosecutor told him someone associated with Petitioner had contacted a State's witness, Ms. Williams, and Petitioner would be prosecuted the next time that occurred (Ex. E at 6). Petitioner's on the record statements refute any assertion that he would have accepted a plea offer had he been aware of the content of the depositions. Additionally, review of the depositions would not have provided Petitioner any more information regarding the history of his relationship with Ms. Williams than he already knew or, for the reasons previously discussed, provided any helpful impeachment material. Petitioner thus failed to show a reasonable probability of a different outcome had he been aware of the content of the depositions. Therefore the state court's denial of Petitioner's claim was not unreasonable.

      C.     <u>Ground Three: "Counsel failed to motion this [sic] to have a suppression hearing for listed State's witness Ronona [sic] Williams."</u>

Petitioner contends defense counsel should have sought suppression of Ms. Williams's testimony on the ground that a suppression hearing would have provided counsel an opportunity to explore Ms. Williams's motive for testifying, and revealed that she was motivated by her desire to evade payment of a $200.00 "credit" she had received from Petitioner prior to the controlled buy (doc. 1 at 6; doc. 13, Ex. N at 14–15).

           1.     Clearly Established Federal Law

The Strickland standard is set forth *supra*.

  2. Federal Review of State Court Decision

Petitioner raised this claim as Ground Three in his Rule 3.850 motion (Ex. N at 14–15). The state circuit court denied relief on the following grounds:

> In Ground Three, the Defendant argues that counsel was ineffective for failing to file a Motion to Suppress, claiming that at a [suppression] hearing, counsel could have cross-examined Williams and discovered her true motives for testifying against the Defendant. However, there is no reason to believe that Williams would have testified as the Defendant claims, especially since she did not do so at her deposition or at trial. Furthermore, a suppression hearing could not be used as a vehicle for eliciting impeachment testimony. Counsel had no basis to . . . file a Motion to Suppress. Therefore, counsel cannot be ineffective for failing to file a meritless claim. *Farina v. State*, 937 So. 2d 612, 618 n.5 (Fla. 2006). The Defendant's claim in Ground Three is due to be denied.

(Ex. N at 51).

Under Florida law, a witness's motive for testifying adversely to the defendant is grounds for impeaching the witness's credibility by showing that the witness is biased and motivated by a self-interest, whether pecuniary or otherwise, to testify adversely to the defendant. *See* Fla. Stat. § 90.608(2). However, Petitioner failed to show that a witness's motive for testifying is proper grounds for seeking suppression of the witness's testimony. Therefore, defense counsel was not deficient for failing to file a motion to suppress Ms. Williams's testimony on this basis. Further, the filing of a motion to suppress was not the proper vehicle for exploring Ms. Williams's motives for testifying; the discovery process, including depositions, was the appropriate vehicle, which counsel utilized. Therefore, Petitioner failed to show counsel performed deficiently by failing to file a motion to suppress. He also failed to show a reasonable probability of a different outcome had counsel done so. Therefore, the state court's denial of this claim was not an unreasonable application of Strickland.

  D. Ground Four: "Counsel was ineffective by allowing the defendant to be threaten[ed] by the prosecuting attorney."

Petitioner alleges the prosecutor questioned him, in the presence of defense counsel, regarding allegations that he or his family threatened Ms. Williams (doc. 1 at 6; *see* doc. 13, Ex. N at 16). Petitioner states he denied the allegations, and the case proceeded to trial (*id.*). Petitioner

argues defense counsel was ineffective for failing to argue that the prosecutor proceeded to trial out of vindictiveness (*id.*).

        1.        Clearly Established Federal Law

The Strickland standard is set forth *supra*.

        2.        Federal Review of State Court Decision

Petitioner raised this claim as Ground Four in his Rule 3.850 motion (Ex. N at 16–17). He alleged that after voir dire, the prosecutor met with defense counsel and Petitioner and questioned Petitioner regarding an allegation that Ranona Williams was threatened by Petitioner or his family (*id.* at 16). Petitioner denied the allegation (*id.*). Petitioner alleged the prosecutor then accused him of lying, and told him that he (the prosecutor) would charge him with tampering, and would see to it that by the time Petitioner was released from prison he would be too old to harm anyone (*id.*). Petitioner stated he asked defense counsel why he permitted the prosecutor to confront him, and counsel responded he was not aware the prosecutor would act in such a harsh manner (*id.*). Petitioner argued defense counsel was ineffective for permitting the prosecutor to question him regarding the allegation of tampering, instead of defense counsel discussing the matter with him and conveying a response to the prosecutor (*id.* at 17). Petitioner additionally contended counsel was ineffective for failing to move for a change of venue, because the prosecutor had a personal vendetta against him (*id.*).

The state circuit court denied relief on the following grounds:

> In Ground Four, the Defendant claims that counsel was ineffective for "allowing" him to be threatened by the prosecuting attorney. However, the Defendant himself brought this alleged threat to the Court's attention, and the Court found it to be irrelevant. [reference to trial transcript] The Defendant has not shown deficient performance by counsel, nor has the Defendant shown prejudice. The Defendant's claim in Ground Four is due to be denied.

(Ex. N at 51).

Initially, Petitioner failed to show he was prejudiced by defense counsel's permitting the prosecutor to personally question him about the allegations of witness tampering, in the presence of defense counsel. Additionally, Petitioner failed to show he was prejudiced by counsel's failure to move for a change of venue on grounds of prosecutorial vindictiveness. Under Florida law,

criminal prosecutions must be tried in the county where the offense was committed.  *See* Fla. Stat. § 910.03(1).  However, a change of venue is proper when the trial court finds that a fair and impartial jury cannot be impaneled in the court where the offense was committed.  *See* Fla. Stat. § 910.03(1).  "The test for determining a change of venue is whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom."  McCaskill v. State, 344 So. 2d 1276, 1278 (Fla. 1977) (citation omitted).  In the instant case, the prosecutor's alleged statements to Petitioner outside the presence of the jury did not satisfy the test for a change of venue.  Therefore, Petitioner failed to show a reasonable probability that the trial court would have properly granted a motion for change of venue had counsel made one.

Petitioner failed to demonstrate that the state court's denial of this ineffective assistance of counsel claim was an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on Ground Four.

> E. Ground Five: "Counsel was ineffective for failing to motion in limine [sic] to State's motion to excise the language to only "delivery" of cocaine."

Petitioner asserts prior to trial, the trial court granted the State's motion to amend the information to charge only delivery of cocaine, instead of sale and delivery of cocaine (doc. 1 at 8).  He contends in light of this ruling, defense counsel should have filed a motion in limine to exclude any evidence relating to sale of cocaine (*id.*).

> 1. Clearly Established Federal Law

The Strickland standard is set forth *supra*.

> 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground Five in his Rule 3.850 motion (Ex. N at 18–19).  He argued that in light of the amendment of the information to charge only delivery of cocaine, instead of sale and delivery, defense counsel should have filed a motion in limine seeking to exclude an audio recording of a conversation between him and Ranona Williams, during which Ms. Williams told Petitioner she had money to purchase cocaine, and she could obtain more money (*id.*).  Petitioner further argued counsel should have objected to the prosecutor's comment during closing

argument that the amount of money Ms. Williams brought to her meeting with Petitioner was not payment for a debt, but payment for the purchase of cocaine (*id.* at 19). He contended counsel should have requested a curative instruction reminding the jury that he was charged with only delivery of cocaine (*id.*). Petitioner contended he was prejudiced by counsel's alleged errors, because the jury was led to believe he was a cocaine dealer instead of merely a person who delivered cocaine (*id.*).

> The state circuit court denied the claim on the following grounds:
>
>> In Ground Five, the Defendant alleges that counsel should have filed a Motion in Limine to have the language of "sale of cocaine" removed from his information and changed only to "delivery of cocaine." In addition, the Defendant argues that any evidence of the sale of cocaine should not have been allowed at trial. The record reflects that the Assistant State Attorney did in fact amend the information to include only a charge of delivery of cocaine. [reference to trial transcript]. The jury returned a verdict of guilty on delivery of cocaine only. [reference to verdict form] The evidence the Defendant complains of goes to the charge of Delivery of Cocaine. Again, the Defendant has not shown deficient performance or prejudice.

(Ex. N at 51).

During trial, Ranona Williams testified she telephoned Petitioner at approximately noon on August 15, 2006, and asked him for a "twenty piece" (Ex. E at 27, 31). Ms. Williams testified Petitioner responded he did not have anything, and he instructed Ms. Williams to call him back (*id.* at 31). Ms. Williams testified she again called Petitioner approximately 30–45 minutes later and told him she wanted a "forty piece," because she obtained more money from her friend (*id.* at 32–33). Petitioner directed Ms. Williams to "get dropped off and walk down the road" (*id.* at 33). She testified she met Petitioner in the road, and he told her to put the $40.00 down near a tree, which she did (*id.* at 35). Ms. Williams asked Petitioner, "Where is it?" (*id.* at 36). He responded, "In the cigarette pack" and nodded to a cigarette pack laying on the ground (*id.*).

The audio-taped conversations, which Petitioner contends should have been excluded, were published to the jury (Ex. E at 40–41). The first conversation, which occurred at approximately 11:36 p.m., included the following:

> PETITIONER: What's up?
>
> MS. WILLIAMS: Right now, I'm just—

  PETITIONER:  Oh, hell.  Call me back later on, 276-0293.

. . . .

  MS. WILLIAMS:  If I can get some more money?

  PETITIONER:  Probably be about 35, 40 minutes.

  MS. WILLIAMS:  All right.

(Ex. E at 40).

  The second conversation, which occurred at approximately 12:08 p.m., included the following:

  PETITIONER:  Hello.

  MS. WILLIAMS:  Hi.  It's me. . . . I'm driving, over here by Rutherford, right at (inaudible).

  PETITIONER:  All right, you got to walk—(inaudible)

  MS. WILLIAMS:  Yeah, same way, drop me.

  PETITIONER:  All right, (inaudible).

(*id.* at 41–42).

  Evidence of Petitioner's conversations with Ms. Williams regarding her giving Petitioner money in exchange for cocaine tended to prove the fact that Petitioner delivered cocaine to her.[6] Therefore, the evidence was relevant and admissible.  *See* Fla. Stat. §§ 90.401, 90.402.  Further, Petitioner failed to show that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; therefore, he failed to show that defense counsel had a meritorious basis for seeking exclusion of the evidence.  *See* Fla. Stat. § 90.403.  Defense counsel thus did not perform deficiently by failing to seek exclusion of the evidence and objecting to the prosecutor's comments on this evidence during closing argument (Ex. E at 119–27).  Petitioner also failed to show a reasonable probability that the trial court would have properly excluded the evidence or sustained an objection to the prosecutor's comment during closing argument, if defense counsel had taken the steps Petitioner alleges he should have taken. Petitioner's having failed to satisfy either prong of the Strickland standard, he failed to demonstrate

---

[6] At the time of Petitioner's trial, "deliver" or "delivery" was defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."  Fla. Stat. § 893.02(5) (eff. July 1, 2005).

Case No. 5:10cv39/MCR/EMT

that the state court's denial of his ineffective assistance of counsel claim was an unreasonable application of Strickland. Accordingly, he is not entitled to relief on Ground Five.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 8<u>th</u> day of March 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).